PENOUILH et ux. v. TOYE BROS. YELLOW CAB CO.

No. 17251.

Court of Appeal of Louisiana, Orleans.
April 8, 1940.

Rehearing Denied May 6, 1940.

A. D. Danziger, of New Orleans, for appellant.

Guy J. D'Antonio, of New Orleans, for appellees.

JANVIER, Judge.

This suit for damages against Toye Brothers Yellow Cab Company is brought by Mr. and Mrs. Alphonse Penouilh, she claiming $10,000 for personal injuries alleged to have been sustained in an automobile collision in which she was a passenger in one of the yellow cabs which were involved in the collision, and he, as head and master of the community, claiming $1,127 for medical expenses incurred and expected to be incurred in the future because of Mrs. Penouilh's injuries.

The matter was tried by jury, which returned a verdict in favor of Mrs. Penouilh for $3,500 and in favor of Mr. Penouilh for $350. Defendant has appealed and both plaintiffs have answered the appeal, praying that the amounts awarded be increased in accordance with the prayer of the original petition.

It is shown that, on the afternoon of November 8, 1937, Mrs. Penouilh was a passenger in one of defendant's taxicabs. She was accompanied by a Mrs. Bourgeois and three children of the latter. All of them were in the rear of the cab, Mrs. Penouilh occupying the right rear seat and Mrs. Bourgeois the left rear seat. Just before the cab reached the corner of Cleveland Avenue and Villere Street, there also neared the same corner another cab of defendant company, the latter approaching from the left side of the cab occupied by Mrs. Penouilh. Each of the drivers of the cabs either did not realize the approach of the other, or believed that the other driver would yield the right of way, and at the last moment each cab was brought to a sudden stop, the drivers maintaining now that there was no collision and Mrs. Penouilh and her witnesses stating most positively that the other cab struck the one in which she was riding a violent blow on the left side—that is, the side opposite to that on which Mrs. Penouilh· was seated. Mrs. Penouilh and her witnesses declare that she was thrown from her seat and fell to the floor in front of her. She maintains that, as a result of this accident, she has sustained injuries, for which she now seeks recovery.

Though counsel for defendant devotes considerable time to an attempt to prove that there was no collision between the two cabs, we do not find it necessary to reach a definite conclusion on this question because it is quite evident that, at least, there was a near-collision and that the cab in which plaintiff was riding was brought to a rather sudden stop. Nor is there any direct evidence to contradict Mrs. Penouilh's statement that, as a result of the sudden and unexpected stop, she was thrown to the floor of the cab. If there was a collision, it was obviously caused by the negligence of one or both of the drivers, and, if they did not collide, then the sudden stop was necessitated by the negligence of one or both, and it follows that there is liability in defendant for such injuries as Mrs. Penouilh did sustain and for such medical expenses as were made necessary by those injuries; and, in fact, very little of the record is devoted to evidence touching upon the collision itself and practically all of more than seven hundred pages of the record are devoted to a controversy between medical men over the question of whether any substantial portion of Mrs. Penouilh's present infirmities resulted from that accident.

In her petition she alleges that she sustained a concussion of the brain, contusions of the scalp, contusions of the left knee and leg, contusions of the lumbar

region of the back, and severe nervous shock. She avers that she was brought to Hotel Dieu, where she was placed under the care and attention of the physician of defendant and that she remained there from November 8, 1937, until November 17, and was then brought to her home in an ambulance. She alleges that during the first day of her confinement in Hotel Dieu she suffered "three severe nervous seizures". She concedes in her petition that prior to the accident, "at intervals of from two to three months", she had suffered slight nervous seizures, but maintains that, since the time of the accident, these seizures have occurred much more frequently and have been considerably more severe. She charges that she was confined to her bed for a period of more than two months, during all of which time she suffered excruciating pain and nervousness. She is fifty-six years of age and in effect alleges that she will be permanently prevented from attending to her household duties.

Apparently, defendant soon discovered that, instead of having been in good health prior to the accident, Mrs. Penouilh had, at various times, suffered from nervous seizures and various other ailments, and had undergone many surgical operations, and, therefore, defendant devoted itself to showing that the present condition of Mrs. Penouilh has not resulted from the accident, but was the natural sequence to these many ailments and operations.

It is shown that, during the year 1920, Mrs. Penouilh was admitted to the Charity Hospital and that again, on the 1st of March, 1921, she went to the hospital suffering with various diseases. The Charity Hospital report shows that her principal complaint was characterized as "spells". She gave a history of having had these fainting "spells" for six years and stated, according to her history, that they had occurred every three weeks and had continued for about an hour. She also said that previously she had been operated on for the removal of a tumor of the womb, which, when removed, weighed 7½ pounds. The diagnosis also showed that she was suffering from chronic salpingitis and from chronic cardio-valvular disease (mitral regurgitation). She returned to the hospital on the 14th of June, 1921, apparently remaining there a little more than three months. On this visit it was found that she was suffering from adherent hemorrhoids and from ovaritis and from a displacement of the uterus. The report shows that she remained in the ward to which she was assigned for about seven weeks, "having 'fits' all the time". The report also shows that she soon returned home but was unable to walk, finding it necessary to return to the hospital. Dated July 8th, we find a note: "Patient continues to have fits". On the 13th of August is an entry showing that she had had an attack lasting one hour, during which she attempted to bite herself and her attendants. On the 18th of July, we find another note showing that she had another attack which lasted two hours and in this report it is shown that "patient's attacks are recurring frequently and apparently increasing in severity and duration". It is shown that on August 30, 1921, she was operated upon for various conditions, the various operations, as we find them in the report, being designated as:

"Rt. Trachelorrhaphy

"Hemorrhoidectomy

"Laparotomy

"Bilat. Salpingectomy."

It appears that she made another visit to the hospital on the 8th of May, 1922, and, from a notation, it appears that she deserted the hospital on the 25th of May. This time she was suffering from hysteria and other ailments. On the 23rd of March, 1923, we find her again entering the hospital, where she remained until April 4th. This time she suffered from chronic metritis and endometritis, hypertrophic arthritis and myelitis. On the 20th of March, 1928, we find her again admitted to the hospital and that she remained for two days, suffering from neurasthenia. On the 18th of April, 1931, she again was admitted to the hospital, remaining six days, this time suffering from diabetes and hysteria, and we find, on this occasion, a note showing that, on her previous admissions, she had been found to be suffering from epilepsy.

It is shown that these various diseases and the results thereof manifested themselves intermittently from that time almost continuously to the time of the accident. A careful study of the various hospital reports shows that the unfortunate plaintiff had suffered from sinus trouble, neurasthenia, arthritis, hysteria, backaches, headaches, epilepsy, arterio sclerosis and diabetes. It also appears that she had undergone operations for the removal of a tumor, for appendicitis, for the elimination of hemorrhoids and for mastoiditis, and also for the removal of ovaries.

We have attempted to compare the evidence concerning plaintiff's present condition with that showing her previous condition and find that, prior to the accident, she had suffered from practically all of the complaints and diseases which she now has. It is contended by her physician that the "spells" are much more frequent and much more severe; that she did not suffer previously with epilepsy, nor with diabetes.

As carefully as we have found it possible to do so, we have analyzed the conflicting medical expert testimony concerning these various diseases, and we find ourselves unable to reach any conclusion other than that plaintiff's condition, as it now exists, is identical with what it was previous to the accident. We find, also, that there has been no certainty of proof that the "spells" have increased in frequency, or that they have been any more severe. It is true that she did suffer contusions and that she was confined to her bed for a period of some two months, but, when the immediate effect of these bruises had disappeared, we find it impossible to say that she was in any more serious condition than that in which she was previously, which, unfortunately, seems to have been about as serious as it is possible to imagine.

■ It is true that in the lower court it was apparently believed that plaintiff had shown a considerable increase in the frequency of these "spells", but a careful analysis of the evidence does not justify the conclusion that this is true. On the contrary, we believe that it shows beyond any possible doubt that no substantial change has occurred.

For the injuries that Mrs. Penouilh has sustained, we believe that $1,500 should be ample compensation.

■ The claim of Mr. Penouilh must be reduced to $188 since that is all that is shown to have been expended on account of Mrs. Penouilh. There can be no allowance for future medical expenses to be incurred since we do not think that any future medical services will be properly chargeable to the accident itself.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be and it is amended by reducing the amount of the award to Mrs. Alphonse Penouilh to $1,500, with legal interest from judicial demand, and by reducing the amount of the award to Mr. Alphonse Penouilh to $188, with legal interest from judicial demand.

Plaintiffs to pay costs of appeal; defendant to pay all other costs.

Amended and affirmed.